motion for recusal. Kalkowski's assignment of error is without merit.

## CONCLUSION

Accordingly, we find that the district court did not err in determining Kalkowski was not entitled to the CIAs and in denying Kalkowski's motion for recusal.

AFFIRMED.

———————————

Brian Marcuzzo and Donna Marcuzzo, appellants,
v. Bank of the West et al., appellees.
___ N.W.2d ___

Filed May 1, 2015.    No. S-14-367.

1. **Summary Judgment: Appeal and Error.** An appellate court will affirm a lower court's grant of summary judgment if the pleadings and admissible evidence offered at the hearing show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law.

2. **Courts: Dismissal and Nonsuit: Appeal and Error.** The exercise of the power to dismiss a matter for lack of prosecution rests in the sound discretion of the trial court, whose ruling will not be disturbed on appeal in the absence of a showing of an abuse of discretion.

3. **Appeal and Error.** Appellants are required to point out the factual and legal bases that support their assignments of error.

4. ____. An argument that does little more than restate an assignment of error does not support the assignment, and an appellate court will not address it.

5. ____. An appellate court will not address arguments that are too generalized or vague to be understood.

6. **Actions: Parties: Standing: Jurisdiction.** Before a party is entitled to invoke a court's jurisdiction, that party must have standing to sue, which involves having some real interest in the cause of action.

7. **Actions: Parties: Standing.** To have standing to sue, a plaintiff must have some legal or equitable right, title, or interest in the subject matter of the controversy.

8. ____: ____: ____. The purpose of an inquiry as to standing is to determine whether one has a legally protectable interest or right in the controversy that would benefit by the relief to be granted.

9. **Declaratory Judgments.** Where declaratory relief is sought, an actual controversy must be present.

10. **Standing: Claims: Parties.** Standing requires that a plaintiff show his or her claim is premised on his or her own legal rights as opposed to rights of a third party.

11. **Contracts: Parties.** Only a party (actual or alleged) to a contract can challenge its validity.
12. **Contracts: Parties: Standing.** The fact that a third party would be better off if a contract were unenforceable does not give him or her standing to sue to void the contract.
13. **Contracts: Parties.** Parties can recover as third-party beneficiaries of a contract only if it appears that the rights and interest of the third parties were contemplated and that provision was being made for them.
14. **Mortgages: Assignments: Parties: Standing.** A borrower who is not a party to a mortgage assignment, or a party intended to benefit from the assignment, lacks standing to challenge the assignment.
15. **Actions: Parties.** The plaintiff bears the responsibility to prosecute a case with reasonable diligence.
16. **Actions: Dismissal and Nonsuit: Rules of the Supreme Court.** In the absence of a showing of good cause, a litigant's failure to prosecute a civil action, resulting in noncompliance with the Nebraska Supreme Court's progression standards for civil actions in district courts, is a basis to dismiss an action on account of a lack of diligent prosecution.
17. **Courts: Dismissal and Nonsuit.** The district court has the inherent power to dismiss a case for failure to prosecute with due diligence.

Appeal from the District Court for Sarpy County: Max Kelch, Judge. Affirmed.

Douglas W. Ruge for appellants.

Ryan K. Forrest, of Kozeny & McCubbin, L.C., for appellee Erika Knapstein.

Jennifer L. Andrews and Alison M. Gutierrez, of Kutak Rock, L.L.P., for appellees Wells Fargo Bank, N.A., and Federal National Mortgage Association.

Heavican, C.J., Wright, Connolly, McCormack, and Cassel, JJ.

McCormack, J.

## NATURE OF CASE

Brian Marcuzzo and Donna Marcuzzo asserted causes of action against Wells Fargo Bank, N.A. (Wells Fargo), the Federal National Mortgage Association (Fannie Mae), Erika Knapstein, Bank of the West, and Jeff T. Courtney (collectively the defendants), relating to the foreclosure and subsequent sale of their residence. All causes of action are premised on

the assertion that the assignment of the Marcuzzos' mortgage was improper. The district court granted summary judgment to Wells Fargo, Fannie Mae, and Knapstein, and dismissed Bank of the West and Courtney. The Marcuzzos appeal.

## BACKGROUND

The Marcuzzos asserted six causes of action against the defendants. All causes of action arose out of the sale of the Marcuzzos' residence, pledged as collateral for a mortgage loan on which the Marcuzzos defaulted. Actions for quiet title, declaratory judgment, and injunctive relief were asserted against all of the defendants. The Marcuzzos sought actions for accounting, conversion, and slander of title against Wells Fargo. The Marcuzzos sought an action for wrongful foreclosure against Wells Fargo, Fannie Mae, and Knapstein, the successor trustee of the deed of trust. In the district court, the actions against Wells Fargo, Fannie Mae, and Knapstein were dismissed in summary judgment and the remaining causes against Bank of the West and Courtney were dismissed for failure to prosecute. The Marcuzzos appeal.

### Mortgage Documents

On February 6, 2004, the Marcuzzos executed and delivered a promissory note in the principal amount of $214,949 to Advantage Mortgage Service, Inc. (Advantage Mortgage). To secure payment of the note, the Marcuzzos executed and delivered a deed of trust to Mortgage Electronic Registration Systems, Inc. (MERS). The deed of trust granted Advantage Mortgage a secured interest in the Marcuzzos' residential property located in Sarpy County, Nebraska. The deed of trust was duly recorded in the office of the Sarpy County register of deeds.

The note executed in the Marcuzzos' names was negotiated from Advantage Mortgage to Commercial Federal Bank (Commercial Federal). Wells Fargo purchased Commercial Federal's loan portfolio, including the note and deed of trust. Commercial Federal endorsed the note in blank and transferred possession of it to Wells Fargo in July 2005. Commercial Federal was acquired by Bank of the West.

On July 27, 2011, MERS, as nominee for Advantage Mortgage, assigned all of its rights, title, and interest in the deed of trust to Wells Fargo by a corporate assignment of deed of trust. The corporate assignment of deed of trust was recorded in the office of the Sarpy County register of deeds.

Wells Fargo has had possession of the note and deed of trust since it was delivered to it in July 2005. No other entity has claimed ownership of the note and deed of trust or has demanded payment. When the Marcuzzos made payment on their note, the payments were made to and received by Wells Fargo.

### FORECLOSURE AND BANKRUPTCY

In May 2011, the Marcuzzos instituted bankruptcy proceedings under chapter 7 of the U.S. Bankruptcy Code. The Marcuzzos identified Wells Fargo on their bankruptcy schedules as a creditor holding a secured claim on their residence.

The Marcuzzos also began to default on their mortgage loan payments in May 2011. Wells Fargo sent the Marcuzzos multiple notices of default and then accelerated the Marcuzzos' loan balance that was due. The notices provided the Marcuzzos with the opportunity to cure the default.

The Marcuzzos stated that they voluntarily decided to stop making payments until they received adequate answers from Wells Fargo in regard to claimed issues in the paperwork of their mortgage assignment. The Marcuzzos claimed that they are ready and able to pay the past due principal and interest amounts to the proper beneficiary of the loan.

After obtaining a stay of relief in the bankruptcy court, Wells Fargo instituted foreclosure proceedings against the Marcuzzos' residential property. In November 2011, Wells Fargo appointed a successor trustee, Knapstein, in place of the original trustee, Courtney, by recording a substitution of trustee in the office of the Sarpy County register of deeds. Knapstein filed a notice of default in that office on November 9, 2011. Knapstein further sent a notice of default and letter of default to the Marcuzzos.

Notice of sale of the property was published in a local newspaper once a week for 5 weeks beginning on December

14, 2011, and ending on January 11, 2012. This notice provided that the sale was scheduled to take place on January 23. An agreement was reached between Wells Fargo and the Marcuzzos to postpone the sale of the property until February 7. At the sale on February 7, Fannie Mae was the highest bidder, and the property was sold to Fannie Mae for $196,350.47. Knapstein executed a trustee's deed, conveying the property to Fannie Mae, which was filed in the office of the Sarpy County register of deeds.

## Procedural History

The Marcuzzos filed an amended complaint alleging six causes of action regarding their foreclosed residence.

The first cause of action asked for the court to quiet title in the name of the Marcuzzos. The second cause of action asked for declaratory judgment setting forth the "rights and status of the respective parties in the real property, for a temporary and permanent injunction." The third cause of action alleged conversion and asked for an accounting against Wells Fargo based on the mortgage payments Wells Fargo received "when it had not obtained a proper Assignment of the Deed of Trust and Promissory Note." The fourth cause of action alleged slander of title against Wells Fargo. The fifth cause of action asked for "a Temporary Restraining Order and Temporary and Permanent Injunction preventing the sale of the property." Finally, the sixth cause of action alleged a wrongful foreclosure suit against Wells Fargo, Fannie Mae, and Knapstein. As a premise for all causes of action, the Marcuzzos allege that the assignment of their mortgage was defective.

The Marcuzzos averred that Wells Fargo supplied the Marcuzzos copies of the assignment, deed of trust, and promissory note that had been altered from the original documents. At the hearing on the motion for summary judgment, counsel for the Marcuzzos submitted Brian Marcuzzo's affidavit and attached to it several of these mortgage documents, including several deeds of trust, corporate assignments of deeds of trust, and the promissory note.

The Marcuzzos also alleged the assignment was defective because a Wells Fargo employee signed the assignment rather

than a Bank of the West employee. Further, the Marcuzzos averred that the assignment by MERS showed a loan servicing number which was different from the original loan servicing number.

Wells Fargo, Fannie Mae, and Knapstein all filed answers to the amended complaint. Bank of the West filed a "Disclaimer of Interest." Bank of the West disclaimed any interest in the property described in the Marcuzzos' amended complaint and acknowledged that it would have no further standing to appear in regard to this case. Courtney did not file such a disclaimer of interest.

Wells Fargo and Fannie Mae filed a motion for summary judgment asking the court to dismiss all causes of action against them. Knapstein also filed a motion for summary judgment to dismiss all causes of action against her.

The district court granted the summary judgment motion in favor of Wells Fargo as to the conversion, accounting, and slander of title claims, and granted summary judgment in favor of Wells Fargo, Fannie Mae, and Knapstein as to the injunctive relief claim. The court granted summary judgment on the alleged action for conversion and accounting, because the prayer for relief had not specifically requested relief relating to conversion and because the court found Wells Fargo to be the holder of the note since 2005, rightfully entitling it to payments on the note, and not meriting an accounting action. The court granted summary judgment on the slander of title claim, because the evidence did not reflect that Wells Fargo or an agent had filed any document with knowledge that the statement was false or with reckless disregard for its falsity. The court also granted summary judgment on the claim for injunctive relief, because the real property had been sold and, thus, the request was moot.

The district court denied the motions for summary judgment as to the actions for quiet title, declaratory judgment, and wrongful foreclosure. The court reasoned that Wells Fargo, Fannie Mae, and Knapstein had not shown that the Marcuzzos were served proper notice of foreclosure proceedings as required by Nebraska statutes. Therefore, the district court

found they had not met their burdens of establishing no material issue of fact that they complied with such statutes.

Wells Fargo, Fannie Mae, and Knapstein then filed renewed motions for summary judgment. The renewed motions included evidence that Wells Fargo and Knapstein sent notices to the Marcuzzos prior to acceleration of their debt, notifying them of the default, actions required to cure the default, and a date by which the default must be cured to prevent sale of the property.

The district court granted the renewed motions for summary judgment with regard to the claims of quiet title, declaratory judgment, and wrongful foreclosure. The district court found that there was no material issue of fact that Wells Fargo was the rightful holder and owner of the mortgage on the Marcuzzos' residence, since (1) Wells Fargo had possession of the note and deed of trust, (2) no other entity had claimed ownership of the note and deed of trust or demanded payment, (3) the Marcuzzos' prior payments were received by Wells Fargo, and (4) Wells Fargo was included in bankruptcy proceedings as the creditor of the Marcuzzos' residence. Therefore, the court granted summary judgment on the actions for quiet title, declaratory judgment, and wrongful foreclosure.

Because no final order had yet been issued as to Courtney or Bank of the West, Wells Fargo and Fannie Mae filed a motion to dismiss "any and all claims [the Marcuzzos] may have against any and all of the Defendants in this action due to [the Marcuzzos'] failure to diligently prosecute such claims." The Marcuzzos filed a "Resistance to Motion to Dismiss and Motion for Final Order." The Marcuzzos agreed that the court should dismiss all actions as to Courtney and Bank of the West. However, the Marcuzzos asserted that the action as to Bank of the West should have been dismissed because Bank of the West had filed a disclaimer of interest, and not because of a failure to prosecute. The Marcuzzos argued that the action against Courtney should have been dismissed through the district court's ruling that there had been a proper substitution of trustee and conveyance of title, and

not dismissed because of a failure to prosecute. Following these motions, the district court issued an order dismissing the actions against Courtney and Bank of the West for lack of prosecution.

The Marcuzzos now appeal the district court's grant of summary judgment to Wells Fargo, Fannie Mae, and Knapstein and the dismissal of the case against Courtney and Bank of the West for lack of prosecution. The Marcuzzos argue that because there are issues in the evidence regarding the assignment of their mortgage, summary judgment should not have been granted. The Marcuzzos also argue that the actions against Courtney and Bank of the West should not have been dismissed *for lack of prosecution*, because the Marcuzzos did not fail to prosecute Courtney and Bank of the West, but, rather, Courtney and Bank of the West were, effectively, no longer parties to the suit.

## ASSIGNMENTS OF ERROR

The Marcuzzos assign as error the district court's (1) award of "summary judgment since there were material facts when the evidence, viewed in a light most favorable to the [Marcuzzos], including reasonable inferences therefrom," and (2) dismissal of Courtney and Bank of the West for lack of prosecution.

## STANDARD OF REVIEW

[1] An appellate court will affirm a lower court's grant of summary judgment if the pleadings and admissible evidence offered at the hearing show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law.[1]

[2] The exercise of the power to dismiss a matter for lack of prosecution rests in the sound discretion of the trial court, whose ruling will not be disturbed on appeal in the absence of a showing of an abuse of discretion.[2]

---

[1] *Countryside Co-op v. Harry A. Koch Co.*, 280 Neb. 795, 790 N.W.2d 873 (2010).

[2] See *Schaeffer v. Hunter*, 200 Neb. 221, 263 N.W.2d 102 (1978).

## ANALYSIS

[3-5] As an opening matter, we begin our analysis by reiterating that appellants are required to point out the factual and legal bases that support their assignments of error.[3] Further, an argument that does little more than restate an assignment of error does not support the assignment, and an appellate court will not address it.[4] Finally, this court will not address arguments that are too generalized or vague to be understood.[5] As we read the Marcuzzos' brief, they set forth two arguments. First, they assert that summary judgment was improperly granted because there were material issues of fact as to whether their mortgage was properly assigned and, second, that the district court should not have dismissed Courtney and Bank of the West for failure to prosecute. To the extent the Marcuzzos wished to assert any more specific errors or arguments, their assignments and arguments were too generalized and vague to be addressed.[6]

### Causes of Action Challenging Assignment

The Marcuzzos' first assignment of error broadly states that the district court erred in granting summary judgment, because there were genuine issues of material fact. But there were six separate claims relating to three of the defendants, which were all dismissed in summary judgment, on differing grounds, and as a part of separate summary judgment orders.

We will generously assume this assignment of error refers to each order, and each claim upon which the court awarded summary judgment. However, the Marcuzzos do not argue in their brief that the district court's award of summary judgment as to injunctive relief was improper. Because this court

---

[3] See *Stiver v. Allsup, Inc.*, 255 Neb. 687, 587 N.W.2d 77 (1998).

[4] *In re Interest of S.C.*, 283 Neb. 294, 810 N.W.2d 699 (2012).

[5] See, *Trieweiler v. Sears*, 268 Neb. 952, 689 N.W.2d 807 (2004); *McLain v. Ortmeier*, 259 Neb. 750, 612 N.W.2d 217 (2000); *Miller v. City of Omaha*, 253 Neb. 798, 573 N.W.2d 121 (1998).

[6] See, *State v. Abdullah*, 289 Neb. 123, 853 N.W.2d 858 (2014); *Coyle v. Janssen*, 212 Neb. 785, 326 N.W.2d 44 (1982).

addresses only assignments of error both assigned and argued, we will not address the award of summary judgment as to the Marcuzzos' prayer for injunctive relief.[7]

The Marcuzzos' remaining five causes of action—for quiet title, declaratory judgment, accounting, slander of title, and wrongful foreclosure—were all premised on the allegation that Wells Fargo is not the proper holder of the mortgage and note, because the assignment of the mortgage was defectively executed. The Marcuzzos thus argue in this appeal that the district court erred in granting summary judgment as to all these claims because, viewing the evidence in a light most favorable to the Marcuzzos, the assignment of the mortgage to Wells Fargo was defective or improper.

Repeatedly, the Marcuzzos argue that there were discrepancies and irregularities in the paperwork of the assignment that create material issues of fact as to whether the assignment was properly executed. The Marcuzzos argue that because the assignment was not proper, Wells Fargo is not the proper holder of its note and mortgage.

However, Wells Fargo, Fannie Mae, and Knapstein argue that the Marcuzzos do not have standing to challenge the validity of the assignment of their mortgage, because they were not a party to the mortgage and cannot articulate an injury caused by the assignment of their mortgage. We agree. We hold that the Marcuzzos lack standing to attack the assignment of their mortgage, because the validity of the mortgage, even under the facts viewed in a light most favorable to the Marcuzzos, would have no effect on the Marcuzzos' obligation to pay. Stated another way, whether or not the assignment of the mortgage was properly executed is not a material issue in the five causes of action addressed in this appeal, because the Marcuzzos cannot show an injury arising from the assignment, regardless of whether the assignment was proper or improper. Therefore, we affirm the district court's grant of summary judgment and dismissal of such causes of action.

---

[7] See, *Pantano v. McGowan*, 247 Neb. 894, 530 N.W.2d 912 (1995); *Label Concepts v. Westendorf Plastics*, 247 Neb. 560, 528 N.W.2d 335 (1995).

[6-9] Before a party is entitled to invoke a court's jurisdiction, that party must have standing to sue, which involves having some real interest in the cause of action.[8] In other words, to have standing to sue, a plaintiff must have some legal or equitable right, title, or interest in the subject matter of the controversy.[9] The purpose of an inquiry as to standing is to determine whether one has a legally protectable interest or right in the controversy that would benefit by the relief to be granted.[10] Even where declaratory relief is sought, an actual controversy must be present.[11]

[10-13] And of particular importance here, standing requires that a plaintiff show his or her claim is premised on his or her own legal rights as opposed to rights of a third party.[12] Accordingly, Nebraska law states that "only a party (actual or alleged) to a contract can challenge its validity."[13] "'[T]he fact that a third party would be better off if a contract were unenforceable does not give him standing to sue to void the contract.'"[14] Parties can recover as third-party beneficiaries of a contract only if it appears that the rights and interest of the third parties "'were contemplated and that provision was being made for them.'"[15]

---

[8] *Fitzke v. City of Hastings*, 255 Neb. 46, 582 N.W.2d 301 (1998).

[9] *Id*. See, *Ponderosa Ridge LLC v. Banner County*, 250 Neb. 944, 554 N.W.2d 151 (1996); *Metropolitan Utilities Dist. v. Twin Platte NRD*, 250 Neb. 442, 550 N.W.2d 907 (1996); *In re Interest of Archie C*., 250 Neb. 123, 547 N.W.2d 913 (1996).

[10] *Cornhusker Pub. Power Dist. v. City of Schuyler*, 269 Neb. 972, 699 N.W.2d 352 (2005); *County of Sarpy v. City of Gretna*, 267 Neb. 943, 678 N.W.2d 740 (2004); *Adam v. City of Hastings*, 267 Neb. 641, 676 N.W.2d 710 (2004); *Crosby v. Luehrs*, 266 Neb. 827, 669 N.W.2d 635 (2003); *Hradecky v. State*, 264 Neb. 771, 652 N.W.2d 277 (2002).

[11] *Ryder Truck Rental v. Rollins*, 246 Neb. 250, 518 N.W.2d 124 (1994).

[12] See *Schauer v. Grooms*, 280 Neb. 426, 786 N.W.2d 909 (2010).

[13] *Spanish Oaks v. Hy-Vee*, 265 Neb. 133, 138, 655 N.W.2d 390, 397 (2003).

[14] *Id*.

[15] *Palmer v. Lakeside Wellness Ctr.*, 281 Neb. 780, 785, 798 N.W.2d 845, 850 (2011).

[14] Though we have never addressed the more specific question of whether a borrower has standing to challenge the assignment of their mortgage, it follows from these rules that a borrower who is not a party to a mortgage assignment, or a party intended to benefit from the assignment, lacks standing to challenge the assignment.

While not many courts have addressed this specific question, the majority of courts have found under these principles that borrowers do not have standing to challenge an assignment of their mortgage, because they are not a party to the assignment contract.[16] This is true even if there is proof that the assignment is somehow flawed.[17] Where the mortgage assignment does not alter the borrower's obligations under the note or mortgage, and no injury is traceable to the mortgage assignment, the borrowers simply have shown no injury.[18] In reaching this conclusion, courts rely on the general common-law principle that the maker of a promissory note cannot challenge his or her obligations under the note by asserting that an invalid assignment had occurred.[19]

For example, in *Yuille v. American Home Mortg. Services, Inc.*,[20] the court held that borrowers in default lacked standing to challenge the validity of the mortgage's assignment where

---

[16] See, e.g., Richard A. Vance and Katherine A. Bell, *MERS Litigation in 2012 and 2013: A Survey of Claims by Borrowers and Others*, 69 Bus. Law. 657 (2014). See, also, *Ward v. Security Atlantic Mortg. Elec. Reg.*, 858 F. Supp. 2d 561 (E.D.N.C. 2012); *Velasco v. Security Nat. Mortg. Co.*, 823 F. Supp. 2d 1061 (D. Haw. 2011), *affirmed* 508 Fed. Appx. 679 (9th Cir. 2013); *Montgomery v. Bank of America*, 321 Ga. App. 343, 740 S.E.2d 434 (2013); *Yuille v. American Home Mortg. Services, Inc.*, 483 Fed. Appx. 132 (6th Cir. 2012); *Dehdashti v. Bank of NY Mellon*, No. 1:12-CV-595-TCB, 2012 U.S. Dist. LEXIS 187433 (N.D. Ga. June 7, 2012) (unpublished opinion).

[17] *Montgomery v. Bank of America, supra* note 16.

[18] See *Bank of New York Mellon Trust Co. v. Unger*, No. 97315, 2012 Ohio App. LEXIS 1723 (Ohio App. 8th Dist. May 3, 2012) (unpublished opinion).

[19] See *Bowles v. Oakman*, 246 Mich. 674, 225 N.W. 613 (1929).

[20] *Yuille v. American Home Mortg. Services, Inc., supra* note 16, 483 Fed. Appx. at 135.

the borrower was a "stranger to the assignment." The court in *Livonia Properties Holdings, LLC v. 12840-12976 Farmington Road Holdings, LLC*[21] agreed, stating that "if the assignment were in fact irregular, that would be an issue between the assignor and assignee."

Some courts while accepting this general rule have recognized an exception if the borrower can show actual prejudice by the improper assignment of the loan.[22] For example, if the borrower was at risk of paying the same debt twice, then the borrower could establish a concrete injury arising from the improper assignment of the mortgage.[23] If the borrower can show any injury that is directly traceable to the assignment of the mortgage, then, under this exception, the borrower would have standing to challenge that assignment.

Only one circuit court has held that the borrower does not need to demonstrate injury in order to have standing to challenge the validity of an assignment that the borrower was not a party to.[24] But, the court strictly circumscribed the type of challenge for which a borrower may have standing.[25] In *Culhane v. Aurora Loan Services of Nebraska*,[26] the First Circuit Court of Appeals held that a borrower can have standing to challenge the assignment of his or her mortgage where the borrower is arguing the mortgage is invalid, ineffective, or void. Examples of void assignments include where the right attempted to be assigned is not assignable, or a prior revocation of the assignment.[27]

However, the *Culhane* court held that a borrower does not have standing to challenge shortcomings in an assignment that

---

[21] *Livonia Properties Holdings, LLC v. 12840-12976 Farmington Road Holdings, LLC*, 399 Fed. Appx. 97, 103 (6th Cir. 2010).

[22] See *In re Sandri*, 501 B.R. 369 (N.D. Cal. 2013).

[23] *Livonia Properties Holdings, LLC v. 12840-12976 Farmington Road Holdings, LLC, supra* note 21.

[24] *Culhane v. Aurora Loan Services of Nebraska*, 708 F.3d 282 (1st Cir. 2013).

[25] *Id*.

[26] *Id*.

[27] 6A C.J.S. *Assignments* § 132 (2004).

render it merely voidable at the election of one party, but otherwise effective to pass legal title.[28]

The plaintiff in *Culhane* argued that the assignor of the mortgage never had valid title to the mortgage, and therefore never had the right to assign the mortgage.[29] If true, the mortgage assignment would be void ab initio. The First Circuit Court of Appeals found that the harm to the plaintiff in such circumstances would be the foreclosure, which could be traced directly to the creditor's "exercise of the authority purportedly delegated by the assignment."[30] The court also found two key facts in favor of standing in light of the allegations presented: (1) that, in Massachusetts, debtors have a statutory right under state law to ensure that any attempted foreclosure on his or her home is conducted lawfully and (2) that the mortgage contained a power of sale without prior judicial authorization.[31] The court was careful to caution that its holding was narrow, specific to Massachusetts law, and applied only when the borrower challenged the mortgage assignment as invalid, ineffective, or void.[32]

We find *Culhane* to be distinguishable from the case at bar. The Marcuzzos did not allege a void assignment. They did not allege that MERS, or Bank of the West, had no legally cognizable right to assign under the mortgage documents. Instead, the Marcuzzos' argument is that the assignment paperwork between the assignor and Bank of the West did not follow the proper procedural framework. Even if this were true, the assignment would not be defective.[33]

Moreover, the Marcuzzos do not argue that they should not be liable for the remainder of their debt under the mortgage.

---

[28] *Culhane v. Aurora Loan Services of Nebraska, supra* note 24. See, also, *Service Mortgage Corp. v. Welson*, 293 Mass. 410, 200 N.E. 278 (1936); *Murphy v. Barnard*, 162 Mass. 72, 38 N.E. 29 (1894).

[29] *Culhane v. Aurora Loan Services of Nebraska, supra* note 24.

[30] *Id*. at 290.

[31] *Id*.

[32] *Id*.

[33] See 21 C.J.S. *Creditor and Debtor* § 27 (2006).

Indeed, when their mortgage was purchased by Wells Fargo in 2005, the Marcuzzos paid Wells Fargo their mortgage payments for nearly 6 years before they defaulted on their loan and demanded explanation as to the irregularities in the assignment paperwork.

In sum, all parties involved, including the assignor of the mortgage, Bank of the West, accepted Wells Fargo as the proper assignee of the mortgage. The Marcuzzos also accepted Wells Fargo as the creditor of their mortgage for nearly 6 years. From our understanding, nothing else changed at the point that the Marcuzzos began to refuse payment, other than their entrance into bankruptcy. No other bank claimed mortgage payments. Neither the amount due on the mortgage nor the terms of the mortgage changed. Thus, even if the Marcuzzos' allegations were proved true, those allegations would fail to establish a real injury in fact caused by a defective assignment.

We need not decide in this case whether a borrower who is at risk of paying the same debt twice, or otherwise at risk of prejudice from an improper assignment, would have standing to challenge that assignment of its mortgage. Had the Marcuzzos established an injury that directly related back to the assignment of their mortgage, our holding may have been different. But no such injury caused by the assignment is alleged or found. Strictly applying Nebraska law, the Marcuzzos were not a party to the assignment. Nor was the assignment made for their benefit. Thus, the Marcuzzos cannot challenge the assignment contract's validity.

The alleged five causes of action, as stated and argued by the Marcuzzos, all depended upon the Marcuzzos' allegation that the assignment was defective or improperly executed. The Marcuzzos failed to demonstrate at the summary judgment hearings that there was any material issue of fact that, if ultimately determined in their favor, would establish standing to challenge the assignment. As such, the Marcuzzos failed to establish standing to challenge the assignment. Because they lacked standing to challenge the assignment, they also lacked standing to assert any cause of action that depended upon the

validity of the assignment. Therefore, albeit for a different reason than stated by the court below, we affirm the district court's grant of summary judgment dismissing the Marcuzzos' actions to quiet title, declaratory judgment, accounting, slander of title, and wrongful foreclosure.

## FAILURE TO PROSECUTE

As far as we can discern, the Marcuzzos' second assignment of error asserts that the district court erred in finding that the Marcuzzos failed to prosecute Courtney and Bank of the West. The Marcuzzos' argument on appeal pertaining to their second assignment of error is as follows:

> The District Court should not have dismissed . . . Courtney and Bank of the West for lack of prosecution . . . . The [Marcuzzos'] Resistance to this motion shows that the District Court effectively ruled on any issues affecting these Defendants. Namely it ruled that Wells Fargo [i]s the proper owner of the loan documents and that the substation of trustee and trustee's sale was proper. These rulings dispose of any interest by these defendants and it was improper to dismiss them. Rather they should have been dismissed as having no interest in the subject property and loan by virtue of the District Court's prior rulings. Dismissal for lack of prosecution should also not be allowed as the [Marcuzzos] were prevented from doing discovery.[34]

We agree with the district court that Courtney and Bank of the West were properly dismissed from the action, and we affirm the district court's dismissal, although again for a slightly different reason than that articulated by the district court.

[15-17] The plaintiff bears the responsibility to prosecute a case with reasonable diligence.[35] In the absence of a showing of good cause, a litigant's failure to prosecute a civil action, resulting in noncompliance with the Nebraska Supreme Court's

---

[34] Brief for appellants at 23.

[35] *Roemer v. Maly*, 248 Neb. 741, 539 N.W.2d 40 (1995); *Schaeffer v. Hunter*, 200 Neb. 221, 263 N.W.2d 102 (1978).

progression standards for civil actions in district courts, is a basis to dismiss an action on account of a lack of diligent prosecution.[36] The district court has the inherent power to dismiss a case for failure to prosecute with due diligence.[37]

On the record provided, Bank of the West filed a disclaimer of interest in the case, stating that it acknowledged it had no interest in the subject matter of the action, and acknowledging that it therefore lacked standing to proceed in the action. However, the record does not show that Courtney filed a disclaimer of interest.

Wells Fargo and Fannie Mae moved for the district court to dismiss "any and all of the Defendants in this action due to [the Marcuzzos'] failure to diligently prosecute such claims." The Marcuzzos filed a resistance to this motion to dismiss, stating that Courtney should be dismissed, since the court already ruled there was no defect in the substitution of Knapstein as the substitute trustee. They also argued that Bank of the West did not need to be dismissed, because it filed a disclaimer of interest on which it should have been dismissed from the case.

The district court granted the motion to dismiss for failure to prosecute "due to no good cause shown why this case should not be dismissed for lack of prosecution." We can find no abuse of discretion in the district court's dismissal of Courtney for lack of prosecution. The record does not reflect that Courtney was included in any of the arguments by the Marcuzzos, and Courtney never entered an appearance in the matter.

However, it was an abuse of discretion for the district court to dismiss Bank of the West *for failure to prosecute*. Because Bank of the West filed a disclaimer of interest and acknowledged that it had no interest in the subject matter of the action, it should have been dismissed from the action for lack of standing.

---

[36] *Billups v. Jade, Inc.*, 240 Neb. 494, 482 N.W.2d 269 (1992).

[37] *Gutchewsky v. Ready Mixed Concrete Co.*, 219 Neb. 803, 366 N.W.2d 751 (1985).

Although our reasoning differs from that of the district court, the court did not err in dismissing Bank of the West. We affirm the district court's dismissal of Courtney and Bank of the West.

## CONCLUSION

For the foregoing reasons, we affirm the grant of summary judgment to Wells Fargo, Fannie Mae, and Knapstein, and we affirm the dismissal of Courtney and Bank of the West.

AFFIRMED.

STEPHAN and MILLER-LERMAN, JJ., not participating.